**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DONNA BUTLER,

Plaintiff,

- v -

No. 05-CV-1134 (GLS/DRH)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**APPEARANCES:** / **OF COUNSEL:**

ERWIN, McCANE & DALY
Attorney for Plaintiff
23 Elk Street
Albany, New York 12207

THOMAS C. ERWIN, ESQ.

HON. GLENN T. SUDDABY
United States Attorney for the Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261

WILLIAM H. PEASE, ESQ.
Assistant United States Attorney

**DAVID R. HOMER**
**UNITED STATES MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

Plaintiff Donna Butler ("Butler") brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for benefits under the Social Security Act. Butler moves for a finding of disability and the Commissioner cross-moves for a judgment on the pleadings. Docket Nos. 7, 8. For the reasons which follow, it is recommended that the Commissioner's

[1] The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

decision be affirmed.

## I. Procedural History

On March 20, 2003, Butler filed for disability insurance benefits and supplemental security income ("SSI") pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 52-61.[2] The applications were denied after the initial determination. T. 27. Butler requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Thomas P. Zolezzi on July 7, 2004. T. 32-41, 293-324. In a decision dated September 15, 2004, the ALJ held that Butler was entitled to benefits for the period from January 20, 2003 to June 2004. T. 23-25. However, the ALJ found that due to a medical improvement after April 7, 2004, Butler was no longer disabled nor entitled to benefits. T. 23-25. Butler filed a request for review with the Appeals Council. T. 11-12. On August 19, 2005, the Appeals Council denied Butler's request, thus making the ALJ's findings the final decision of the Commissioner. T. 5-8. This action followed.

## II. Contentions

Butler contends that the ALJ erred when he failed properly to assess the severity of her condition, apply the treating physician's rule, and properly evaluate her subjective complaints of pain post-April 7, 2004. The Commissioner contends that there was substantial evidence to support the determination that Butler was not disabled after April 7, 2004 and that the ALJ employed the correct legal standards.

---

[2]"T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Docket No. 6.

## III. Facts

Butler is currently fifty-two years old[3] and has a tenth grade education. T. 52, 71. Butler previously worked as a personal healthcare assistant, retail laborer, bartender, production worker, and housekeeper. T. 18, 66-67, 73. Butler alleges that she became disabled on January 20, 2003 due to degenerative disc disease, anxiety, depression, and hypertension. T. 65.

## IV. Standard of Review

### A. Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A) (2003). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired i

Id. at §§ 423(d)(2)(A) & 1382c(a)(3)(B) (2003).

The Commissioner uses a five step process, set forth in 20 C.F.R. §§ 404.1520 & 416.920, to evaluate disability insurance benefits and SSI claims:

---

[3] At the time the ALJ's decision was rendered, Butler was forty-nine years old and considered a younger individual under the Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c).

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. §§ 404.1520 & 416.920 (2003).

A plaintiff has the burden of establishing disability at the first four steps. Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). However, if the plaintiff establishes that an impairment prevents him or her from performing past work, the burden then shifts to the Commissioner to determine if there is other work which the claimant could perform. Id.

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw, 221 F.3d at 131 (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales,

402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Prentice v. Apfel, No. 96 Civ. 851(RSP), 1998 WL 166849, at *3 (N.D.N.Y. Apr. 8, 1998) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). A court, however, cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). If the Commissioner's finding is supported by substantial evidence, it is conclusive. Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

## V. Discussion

### A. Medical Evidence

In early January 2003, Dr. Adetona treated Butler for hypertension and anxiety by prescribing Toprol and Effexor for each ailment respectively. T. 131. In late January 2003, Butler began experiencing renewed pain in her back from an old work-related injury. T. 17, 115, 148. On February 20, 2003, Drs. Haber and Adetona found that she had degenerative spondylosis[4] in the L4-5 and L5-S1 regions. T. 17, 115, 148. On March 6, 2003, Dr. Furlong, an orthopedist, assessed that Butler suffered from L5-S1 disc herniation. T. 139-40.

On April 29, 2003, Butler was psychiatrically evaluated by Dr. Payne, a state agency

[4]Spondylosis is the "dissolution of a vertebrae." DORLAND'S ILLUSTRATED MED. DICTIONARY 1563 (28th ed. 1994) [hereinafter "DORLAND'S"].

consultive examiner. T. 165-68. Butler related to Dr. Payne that she had trouble sleeping due to the back pain but that she was able to do light chores around the house, go to the market, watch television, listen to the radio, and read. T. 165-67. Dr. Payne reported that Butler could follow, understand, and perform simple tasks, but that she would have difficulty with attention, concentration, learning new tasks, making appropriate decisions, and relating to others. T. 167. Dr. Payne concluded that Butler would benefit from counseling, a psychotropic medication evaluation, and vocational rehabilitation. T. 168.

On May 16, 2003, Dr. Roberts, a state agency medical consultant, evaluated Butler's physical residual functional capacity and found that Butler could lift up to twenty pounds frequently and ten pounds occasionally, sit for about six hours in an eight-hour day, stand and walk for about six hours in an eight-hour day, and occasionally perform some postural activities. T. 172-73. Dr. Roberts indicated that Butler had a medically determinable impairment and that she was "somewhat credible." T. 174-75. On May 28, 2003, Dr. Weiss, another state agency medical consultant, psychiatrically evaluated Butler and found that she had no restrictions in her daily living activities, difficulty in maintaining social functioning, nor episodes of deterioration, and that she seldom had deficiencies in maintaining concentration, persistence, or pace. T. 177-89. Dr. Weiss concluded that even though Butler claimed to be depressed and anxious, the impairments were not severe. T. 189. Two days later, on May 30, 2003, Nurse Practitioner Ciraulo, upon examination, indicated that Butler's hypertension, depression, and anxiety were under control with the medications being taken and that Butler stated she was feeling well. T. 258.

On September 3, 2003, Dr. Furlong reported that an MRI taken on August 25, 2003 revealed degenerative disc disease without disc herniation but noted that Butler was "going

about full activities as tolerated." T. 275. On November 13, 2003, Dr. Furlong noted that Butler began wearing a back brace and was attending physical therapy, both of which seemed to be effective in alleviating her pain. T. 273. He further commented that the range of motion in her back was improved and it was easier for Butler to stand on her toes. T. 273. Virtually the same report was rendered on December 31, 2003 and January 28, 2004, and Dr. Furlong further indicated that Butler was seeking to return to work in one month. T. 269-72. On February 25, 2004, Dr. Furlong stated that Butler could almost do a full range of activities of daily living around her house. T. 267. He also noted that Butler's range of motion in her back was improving and that straight leg raises were negative bilaterally. T. 267.

On April 7, 2004, Dr. Furlong observed that Butler was able to do a full range of activities around the house as tolerated and that she did not need to wear the back brace at all times. T. 265. Although Butler stated that she still experienced back pain, Dr. Furlong found that the range of motion in her back continued to improve and that straight leg raises remained negative bilaterally. T. 265. At this juncture, Dr. Furlong noted that Butler planned to return to work in three months. T. 265. On June 30, 2004, Dr. Furlong stated that there was no change in Butler's physical examination from April 7. T. 278. He noted that she was able to do full activities around the house and to exercise. However, her activities of daily living were "severely limited because of a sudden onset of pain" and that she needed to take frequent breaks as a result. T. 278. Dr. Furlong further commented that Butler's back injury had permanency but that she sought to return to work in six months. T. 278-79.

**B. Severity of Impairments**

Butler contends that the ALJ failed properly to assess the severity of her hypertension, depression, and anxiety, he erred in finding that her back pain was not severe under the Listings after April 7, 2004, and he failed to consider whether the combination of impairments was severe under the Listings. The Commissioner contends that the ALJ properly evaluated the severity of Butler's impairments.

As mentioned above, step two of the sequential evaluation process requires a determination as to whether the claimant has a severe impairment which significantly limits the physical or mental ability to do basic work activities. See subsection IV(A) supra. The ability to do basic work activities is defined as "the abilities and activities necessary to do most jobs." 20 C.F.R. §§ 404.1521(b) & 416.921(b) (2003). Basic work activities which are relevant for evaluating the severity of an impairment include:

> (1) Physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b) & 416.921(b) (2003); see Pickering v. Chater, 951 F. Supp. 418, 424 (S.D.N.Y.1996); see also Social Security Ruling 85-28, 1985 WL 56856, at *3-4, Titles II and XVI: Medical Impairments That Are Not Severe (S.S.A. 1985).

Age, education, and work experience are not evaluated in determining if the impairment or combination of impairments are severe. 20 C.F.R. §§ 404.1520(c) & 416.920(c) (2003). The severity analysis does no more than "screen out de minimis

claims." Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995). If the disability claim rises above the de minimis level, then further analysis is warranted. Id. Where a claimant alleges multiple impairments, the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 404.1523 (2003); Dixon, 54 F.3d at 1031.

While the ALJ concluded that Butler's degenerative disc disease was severe, he found that the hypertension, depression, and anxiety were not severe. T. 18-19. Butler contends that the ALJ failed to recognize the severity her hypertension, depression, and anxiety. Here, the medical evidence does not support Butler's contention that either her hypertension, depression, or anxiety qualify as severe impairments. The record demonstrates that Butler was receiving medication for these ailments, namely Toprol and Effexor, and that the medications kept these conditions under control. T. 258. In fact, Butler stated she was feeling well as a result of these medications. T. 258. Additionally, regarding to the depression and anxiety, psychiatric evaluations performed by the consultative examiners established that these conditions were far from severe. See T. 165-68, 177-189. These ailments did not impede her ability to do basic work activities. Thus, there is substantial evidence to support the ALJ's findings regarding the severity of Butler's impairments and it is recommended that the Commissioner's findings in this regard be affirmed.

Butler further alleges that the ALJ improperly found that her back pain, solely and in conjunction with her other impairments, was not severe under Appendix 1 of the Regulations. As previously stated, at step three of the sequential disability evaluation process, the ALJ must determine whether the claimant's conditions meet or equal the

requirements for any impairment listed in Part 404 of the Social Security Regulations, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii). "The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. §§ 404.1525(a) & 416.925(a). If a claimant's impairment or combination of impairments meets or equals a listed impairment, the evaluation process is concluded and the claimant is considered disabled without considering the claimant's age, education, or work experience. 20 C.F.R. § 404.1520(a)(4)(iii) & 416.920(a)(4)(iii).

The burden is on the plaintiff to present medical findings which show that his or her impairments match a listing or are equal in severity to a listed impairment. Zwick v. Apfel, 1998 WL 426800, at *6 (S.D.N.Y. July 27, 1998). In order to show that an impairment matches a listing, the claimant must show that his or her impairment meets all of the specified medical criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. §§ 404.1525(d) & 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," such impairment does not qualify. Sullivan, 493 U.S. at 530. To make this showing, the claimant must present medical findings equal in severity to all requirements which are supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1526(b) & 416.926(b). Any abnormal physical findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B). Furthermore, the medical reports should reflect physical limitations based upon actual observations and not just the claimant's subjective complaints. Id.

With regard to the back pain, Listing 1.04 for disorders of the spine states in part that there must be:

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss ***and***, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A) (2004) (emphasis added).

Here, there is no evidence in the record, after April 7, 2004,[5] that showed nerve root compression or motor loss. T. 265, 278-88. Furthermore, although Dr. Furlong noted that Butler's range of motion in her back was improving, Dr. Furlong stated that her straight leg raises were negative bilaterally. T. 265, 278. This clearly establishes that Butler's back impairment was not severe under Listing 1.04(A) and that the ALJ correctly applied the legal standards. Additionally, even combining Butler's back impairment with her hypertension, depression, and anxiety, her impairments would still not match or equal in severity a listed impairment. As stated above, the hypertension, depression, and anxiety were not severe and the back injury was not severe under the Listing. Thus, the ALJ's determination was not erroneous and was supported by substantial evidence in the record.

Accordingly, it is recommended that the Commissioner's findings in this regard be affirmed.

**C. Treating Physician's Rule**

Butler contends that the ALJ did not give proper weight to a June 30, 2004 report by

---

[5] As indicated earlier, the ALJ found Butler was disabled until April 7, 2004, when there was medical improvement. See supra p. 2.

her treating orthopedist, Dr. Furlong.

When evaluating a claim seeking disability benefits, factors to be considered include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant. Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir. 1991). Generally, more weight is given to a treating source. Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2) (2003); Shaw, 221 F.3d at 134. Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(I) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503. If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given. Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. Id. at 133-34; see 20 C.F.R. §§ 404.1527(e) & 416.927(e) (2003).

On June 30, 2004, Dr. Furlong noted that Butler was able to do full activities around the house and exercise but that her activities of daily living were "severely limited because of a sudden onset of pain" and that she needed to take frequent breaks as a result. T. 278.

These statements were included in the subjective portion of Dr. Furlong's report. T. 278. Notwithstanding, Dr. Furlong objectively opined that there was no change in Butler's physical examination from April 7, 2004. T. 278. Dr. Furlong then indicated that Butler's back injury had permanency but that she sought to return to work in six months. T. 278-79. The ALJ concluded that this evaluation could not be afforded great weight because Dr. Furlong's assessment of permanency is a decision reserved solely for the Commissioner and the assessment that she was severely limited in her daily activities was not consistent with the objective findings. T. 22.

In support of his conclusion, the ALJ relied on the inconsistencies within the June 30 report as well other medical opinions in the record. T. 22. First, as noted previously, the decision on whether a claimant is disabled is reserved for the Commissioner and, thus, the ALJ was correct in making his statement regarding this issue. Snell, 177 F.3d at 134; 20 C.F.R. §§ 404.1527(e) & 416.927(e). Moreover, in regards to the opinion that Butler was severely limited in her abilities to perform daily activities, Dr. Furlong stated in his evaluation that there was no change from Butler's physical examination on April 7 wherein he found that Butler's range of motion was improving, straight-leg raises were negative, and she was able to do activities around the house as tolerated. T. 265. Even within the June 30 evaluation, Dr. Furlong contradicted himself by stating that Butler could perform full activities around the house and exercise but that she was severely limited by a sudden onset of pain. T. 278.

The statement that Butler was severely limited in her ability to activities of daily living are further belied by Dr. Furlong's other reports dating back to September 2003. See T. 265-75. Dr. Furlong noted in his evaluations that Butler had been performing activities of

daily living as tolerated since at least September 3, 2003, her physical therapy was effective, and her back pain had been improving to the extent that Butler thought she would be able to go back to work in a short time. T. 265-75. These findings were further corroborated by the opinions of the consultative examiners. T. 165-67, 172-73, 187. Thus, based on objective medical findings in the record, the ALJ did not err when he did not afford Dr. Furlong's June 30, 2004 report great weight. Accordingly, it is recommended that the Commissioner's finding in this regard be affirmed.

**D. Subjective Complaints of Pain**

Butler contends that the ALJ's decision not to credit fully her subjective complaints of disabling pain was in error.

The basis for establishing disability includes subjective complaints of pain even where the pain is unsupported by clinical or medical findings provided that the underlying impairment can be "medically ascertained." 20 C.F.R. § 404.1529 (2003); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999). A finding that a claimant suffered from disabling pain requires medical evidence of a condition that could reasonably produce such pain. An ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be expected to be consistent with the medical and other evidence. 20 C.F.R. § 404.1529 (2003); Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Pain is a subjective concept "difficult to prove, yet equally difficult to disprove" and courts should be reluctant to constrain the Commissioner's ability to evaluate pain. Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983). "The ALJ must discuss his resolution of the claimant's credibility regarding pain in a narrative discussion that provides specific

reasons for the weight that he assigned to the claimant's statements; he may not merely conclude that the claimant's statements are not credible." Lewis v. Apfel, 62 F. Supp. 2d 648, 658 (N.D.N.Y. 1999).

The claimant's credibility and motivation, as well as the medical evidence of impairment, are used to evaluate the true extent of the alleged pain and the degree to which it hampers the applicant's ability to engage in substantial gainful employment. See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1978); Lewis, 62 F. Supp. 2d at 653. If there is conflicting evidence about a claimant's pain where the degree of pain complained of is not consistent with the impairment, the ALJ must make credibility findings. Donato v. Sec'y of HHS, 721 F.2d 414, 418-19 (2d Cir. 1983). The ALJ must consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

> (I) [The claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
>
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
>
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2003).

Here, the ALJ concluded that Butler's allegations of disabling symptoms and limitations were not totally credible as of April 7, 2004 because she was able to engage in a wide range of activities despite her impairment. T. 22-23. In support of his conclusion, the ALJ noted that Butler testified that she could perform daily functions such as shopping for groceries with some help, cooking, cleaning her house, doing the laundry, attending church, visiting her mother, watching television, reading, and going camping. T. 23, 311-18. Further, after examining Butler in 2004, Dr. Furlong reported that Butler was going about full activities around the house as tolerated and recommended increasing her activities. T. 23, 265, 278. Thus, there is substantial evidence to support the ALJ's conclusion that Butler's subjective complaints of pain were not fully credible.

Therefore, it is recommended that the Commissioner's determination on this ground be affirmed.

## VI. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision denying disability benefits be **AFFIRMED**, Butler's motion for a finding of disability (Docket No. 7) be **DENIED**, and the Commissioner's cross-motion (Docket No. 8) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing

Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Date: October 30, 2007
Albany, New York

David R. Homer
United States Magistrate Judge